IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
DIVISON

John P. Honnigford
Petitioner

v.                                                    Case #:

                                                Crim Case #: **3:18-cr-00031-RLY-MPB-1**

Mark Williams,
Acting Warden, FCI Elkton
Respondent


### SWORN DECLARATION OF John P. Honnigford

### PURSUANT TO 28 U.S.C. SECTION 1746

1. The petitioner, John P. Honnigford, is currently serving a sentence for Possessing Sexually Explicit Material Involving Minors. He has thus far served approximately 2 months in Federal custody, with approximately 58 months remaining on his sentence.

2. On March 26, 2020, U.S. Attorney General William Barr issued a directive to Bureau of Prison Director Michael Carbajal in response to COVID-19. In the memo, Attorney General Barr urges the BOP to immediately reduce the prison population by allowing eligible prisoners to complete their sentence on home confinement. Attorney General Barr outlined the criteria for the BOP to consider when deciding which inmates are appropriate candidates for release to home confinement. Attorney General Barr told the BOP to prioritize granting home confinement to inmates in low and minimum security prisons who were convicted of low level non-violent crimes and without gang affiliation or sex offenses. Attorney General Barr also recommends that they have shown good conduct, with low pattern scores and have reentry plans for release that won't put them or others at greater risk for contracting the virus. On April 4, 2020, Attorney General Barr ordered that the Bureau of Prisons expand the group of federal inmates eligible for early release. In a memo to Michael Carbajal, the director of the Bureau of Prisons, Attorney General Barr stated that he was intensifying the push to release prisoners to home confinement because "emergency conditions" created by the COVID-19 has affected the ability of the bureau to function.

1

3. On March 27, 2020, The U.S. House of Representatives passed The Cares Act which includes a provision removing any limits related to the time inmates may spend on home confinement, making it clear that inmates are legally eligible to be released on home confinement at any time during their sentence.

4. Petitioner meets all expanded criteria set forth by Attorney General Barr to be considered for home confinement. Petitioner is serving a sentence for a non-violent Possession of Sexually Explicit Material Involving Minors related crime. Petitioner does not pose a danger to the community, as evidenced by his placement in a low-security camp and his compliance during more than 2 years of pre-trial release through the U.S. Marshals Service. Petitioner does not have any history of violence, or gang involvement. Prior to his current offence, he has no history of sexual offenses. Petitioner is at low-risk for recidivism and is involved in appropriate and productive activities as available through the Bureau of Prisons.

5. Petitioner has a reentry plan for release which will not put himself or others at greater risk for contracting the virus. Petitioner's family has been quarantined and they are coronavirus free, reducing the possibility that petitioner may contract or spread the virus. If petitioner is granted release to home confinement, petitioner's family pledges to relocate petitioner from FSL Elkton to a secure and approved location in Evansville, IN using the utmost care to limit petitioner's viral exposure while in transit. Upon arrival in Evansville, petitioner's family pledges to quarantine petitioner and anyone involved in his transport in a secure location as approved by the U.S. Marshals and in accordance with recommendations from the Centers for Disease Control.

6. The FCI Elkton Prison Complex consists of a prison and one satellite camp totaling approximately 2417 prisoners. FCI Elkton., a low-security Prison confines approximately 1,999 Inmates. A low-security satellite camp FSL houses the remaining 418 Inmates.

7. Guards, Officers, Nurses, Counselors, and all other BOP staff travel repeatedly back and forth between the outside world and into the confines of the FCI Elkton Prison complex.

8. Staff members have openly told inmates, petitioner included, that upon entering the prison compound they are screened for COVID-19. Staff say the screening process generally consists of having their temperature checked for fever, and being asked if they have symptoms or feel ill. Once they pass the screening, they enter the complex to perform their duties.

9. The screening process that the BOP has implemented is inadequate and inaccurate. Carriers infected with COVID-19 often do not exhibit fever or any self-diagnosed symptoms or feelings of illness. The CDC has reported that doctors believe up to 25% of carriers are asymptomatic. Without the ability to consistently test, rather than simply screen incoming staff for the virus, the BOP is clearly ill-equipped and unable to safely house inmates by keeping the virus out.

10. Inmate visitors were last permitted inside until Mid-March 2020. With a month-long gap from the last time an outside inmate visitor came into the complex it is logical to conclude that BOP staff, despite being screened, may have introduced the COVID-19 virus into the prison.

11. This flawed process unfairly imposes COVID-19 Coronavirus upon inmates inflicting an elevated likelihood of inmate contraction, and unwillingly subjecting us to a potential death, alone behind these prison walls, and far away from the comfort of our families.

12. At present, petitioner is aware that in excess of 35 inmates and 30 staff members have tested positive for COVID-19, and that 5 inmates have died from COVID-19 at the FCI Elkton Prison facility as of April 15, 2020. These numbers continue to grow daily at an exponential rate. FCI Elkton has been negligent and incapable in its effort to minimize the risk of further spread of the virus into the general inmate population.

13. The prison environment mandates that all people sleep and eat in close quarters. The idea of social distancing in this setting is not feasible. In the FSL Elkton, two housing units totaling 300 inmates are given 5 minutes to retrieve meals from the cafeteria en masse. That is one meal per second, which causes extreme crowding and unsafe conditions. The Coronavirus is spread mainly through person to person contact. More specifically, the Coronavirus is spread between people who are in close contact within about six feet of one another through respiratory droplets produced when an infected person coughs or sneezes. When an inmate coughs or sneezes, often without covering, in the radius of bunks, petitioner is completely exposed and unprotected. Thus far, inmates have been issued 2 paper one-time use masks as their only protection from airborne viral exposure. This is clearly insufficient. The CDC also recommends frequent environmental sanitation and frequent hand-washing. The inmates at Elkton have not been provided sufficient cleaning agents or soap to do either. To the petitioner's knowledge, the personal living areas of the inmates in the FSL dormitory have not been sanitized in weeks. The prison dormitory environment is unsafe, and our Attorney General has recently described these conditions as a "Petri Dish."

14. The weight of this pandemic has completely exhausted resources inside the BOP. Food and sanitation items are in short supply. Religious and counseling services are not available. Whether officers are sick, on leave, or reluctant to come to work due to the Coronavirus, the prison is short-staffed. Inmates and BOP staff are mutually feeling the effects. Administrative officers such as case managers and counselors have been relieved of their normal daily duties and are being used as replacements for the housing unit officers or being sent to monitor inmates receiving care at our local hospitals. Case managers and counselors are significant and valuable resource to inmates as they are who inmates go to for administrative remedies. With their offices closed and inmates on lockdown inmates have no method to seek relief outside of the court.

15. This is an emergency situation. The environment we are in has already been compromised perilously subjecting us to a deadly virus in seeming violation of our 5th and 8th amendment rights. Petitioner's life is in danger and he seeks judicial relief in the form of Bail, Home Confinement, or release. What happens in prisons is often hidden from the public eye. The world should know that this is an extraordinary event and although we may appear invisible, what happens at Elkton and other affected prisons will not stay here. Allowing coronavirus to run rampant inside the walls of the prison, exposes the greater community to elevated risk from the virus. Prison staff run an ever-increasing risk of carrying the virus to and from the prison, and as inmates fall ill in ever-greater numbers, local health services risk increased exposure and potential exhaustion of resources.

16. By not allowing petitioner to complete his sentence safely outside prison walls the BOP is rendering impossible the single most effective self-protective measure, social distancing. Petitioner owes a debt to this country for a single, non-violent offense of Possession of Sexually Explicit Material Involving Minors, but that debt is not a potential death-sentence.

17. Petitioner implores the court to use its judicial discretion and order the Bureau of Prisons to release him to home confinement.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed on April 17, 2020.

*John P. Honnigford* /s/ PoA
John P. Honnigford
Pro Se Petitioner/Declarant